(No. 55651.—)

UNITED ELECTRIC COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Charles Bertetto, Appellee).

*Opinion filed November 18, 1982.—Rehearing denied January 28, 1983.*

Henry D. Noetzel & Associates, Ltd., of Peoria (Henry D. Noetzel and Steven J. Hohmann, of counsel), for appellant.

No appearance by appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that on November 3, 1975, petitioner, Charles Bertetto, in the course of his employment by respondent, United Electric Coal Company, was last exposed to the hazards of an occupational disease, that said exposure resulted in an occupational disease, and that as a result petitioner sustained a disablement which was compensable under the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1975, ch. 48, par. 172.36 *et seq.*). The arbitrator awarded petitioner compensation for the permanent partial loss of

hearing in both ears. On review, the Industrial Commission reduced the percentage of loss of hearing and otherwise affirmed the award. On *certiorari* the circuit court of Fulton County confirmed and respondent appealed. 73 Ill. 2d R. 302(a).

Petitioner testified that prior to his retirement at the age of 65 in January of 1976 he had been employed by respondent for approximately 32 years. For approximately 30 years prior to his retirement petitioner worked as a welder. Most of his work consisted of repairing large stripping shovels in the pit of a strip mine. Until the last two or three years of his employment the electric motors and generators on the stripping machines were kept running while petitioner worked on the equipment. Petitioner testified that the noise conditions were not "too bad" until he put the hood down on his welding helmet, which he always wore when welding. Petitioner testified that he could still hear the noise after he went home nights. When not working in the pit petitioner worked in the repair shop with two other workers. In the shop one or two workers would be welding and the other would be repairing equipment, using such machinery as grinders and chipping hammers. During the 15 years prior to his retirement, petitioner wore small rubber ear plugs while doing certain repair jobs. No other ear protection was worn. Petitioner testified that he worked seven days a week. In 1972 petitioner contacted his family physician because of a "sizzling" in his right ear. His family physician sent him to a specialist, Dr. Morris H. Cohen. Petitioner was examined by Dr. Cohen in May and August of 1972, at which time hearing tests were made. Petitioner was again examined by Dr. Cohen in October of 1976.

On the basis of petitioner's testimony that he was examined by Dr. Cohen, petitioner's counsel offered into evidence the reports and audiograms made by Dr. Co-

hen. Over respondent's objection on the ground that the evidence was hearsay, the arbitrator admitted petitioner's exhibits. Exhibit No. 1 consisted of the audiograms made by Dr. Cohen on May 24, 1972, and August 22, 1972, and a letter dated July 26, 1976, written by Dr. Cohen to petitioner's attorney. In the letter of July 26, 1976, Dr. Cohen stated that he had seen petitioner on two occasions, May 24, 1972, and August 22, 1972, and that "[t]he first examination involved ear symptoms following the 'flu,' as well as some hearing loss related to previous noise exposure." Dr. Cohen stated that his diagnosis in 1972 was bilateral sensorineural hearing loss, and that "[t]he basic loss I feel is his previous noise exposure, the difference in hearing acuity in the ears possibly related to the episode with influenza." Dr. Cohen concluded that petitioner should be examined again to determine his current status. Exhibit No. 2 consisted of an audiogram made by Dr. Cohen on October 19, 1976, and a letter written by Dr. Cohen to petitioner's attorney dated October 22, 1976. In the letter of October 22, 1976, Dr. Cohen indicated that a recently taken audiogram showed that petitioner's hearing in both ears had deteriorated since his examination in 1972, and that petitioner had no hearing in the right ear and limited hearing in the left ear. Dr. Cohen stated:

> "[Petitioner] has bilateral sensory neural hearing loss which is related basically to his previous noise exposure and aggrivated [sic] by the passage of time. *** Just what part the flu had to play in this current situation I cannot state but I doubt if it has any serious and significant contributing factors to the current situation. There is no treatment for this particular problem and I feel there is going to be very slow progression of the hearing loss of both ears due to the age factor. I think that the basic cause of his hearing loss is previous noise exposure."

Respondent presented no evidence at arbitration. The arbi-

trator found that petitioner was exposed to the hazards of an occupational disease in the course of his employment by respondent which resulted in the complete and permanent loss of hearing in the right ear to the extent of 100% and the permanent and complete loss of hearing in the left ear to the extent of 50% and awarded petitioner compensation in the sum of $200 per week for a period of 75 weeks.

At the hearing before the Industrial Commission respondent offered into evidence the deposition of Dr. M. Reese Guttman, taken on October 17, 1979. Dr. Guttman examined petitioner on July 18, 1978, at which time he performed various tests, including an audiogram. Dr. Guttman's diagnosis was that petitioner had a bilateral sensorineural hearing impairment. According to Dr. Guttman, the results of the tests performed on petitioner were inconsistent with a finding that petitioner's hearing impairment was caused by noise exposure. Dr. Guttman gave the following bases for this opinion, first, the audiogram did not show the presence of an acoustic notch, a unique characteristic of noise-induced hearing impairment; second, there was no evidence of recruitment, a condition peculiar to two causes of hearing loss, one cause being exposure to acoustic trauma; third, petitioner had a markedly depressed discrimination score, uncharacteristic of noise-induced hearing impairment; and fourth, petitioner's complaints of tinnitus postdated his hearing loss. After examining the audiograms made by Dr. Cohen, Dr. Guttman stated that the tests reinforced his finding that petitioner did not suffer from noise-induced hearing impairment. The Commission modified the arbitrator's award to provide that petitioner was entitled to the sum of $200 per week for a period of 38 weeks because the injury sustained caused the permanent and complete loss of hearing in the right ear to the extent of 22% and the permanent complete loss of hearing in the left ear to the extent of 16%. On *certiorari* the circuit court of Fulton County confirmed the decision of the

Industrial Commission.

Respondent's contentions on review are that petitioner's exhibits 1 and 2 were improperly admitted into evidence because they were hearsay and that the decision of the Industrial Commission is against the manifest weight of the competent evidence. Respondent asserts that petitioner's exhibits 1 and 2 should not have been admitted because respondent had no opportunity to subject Dr. Cohen to cross-examination concerning the statements contained in the reports and because Dr. Cohen's statements were not made under oath. Respondent submits that these exhibits constitute the sole medical evidence presented by petitioner and without this evidence the finder of fact would have to find the causal connection between the on-the-job exposure to noise and petitioner's hearing loss by inferring it from petitioner's testimony alone and rejecting totally the testimony of respondent's medical expert.

The rule against the admission of hearsay is not absolute; under certain circumstances the probability of accuracy and trustworthiness may serve as a substitute for cross-examination under oath. (See 5 Wigmore, Evidence sec. 1422 (Chadbourn rev. ed. 1974).) Although necessity is often an element of exceptions to the hearsay rule, it is not required. (See 5 Wigmore, Evidence sec. 1423 (Chadbourn rev. ed. 1974).) In *Fefferman v. Industrial Com.* (1978), 71 Ill. 2d 325, this court found trustworthy and admissible a letter from an examining physician concerning a petitioner's claim. In so doing the court distinguished the decision in *American Smelting & Refining Co. v. Industrial Com.* (1933), 353 Ill. 324, where a letter "said to have been written by a physician who attended" (353 Ill. 324, 326) the petitioner was considered properly excluded. The reports and audiograms at issue here were based on examinations performed upon petitioner by a specialist to whom he had been referred by his family physician for evaluation and treatment. There is no challenge to their authenticity.

Moreover, the audiograms were examined by respondent's medical witness, whose evaluation of them, to some extent, formed the basis for his opinion concerning the cause of petitioner's condition. Under the circumstances we believe the information contained in the challenged exhibits was trustworthy and conclude that the arbitrator did not err in admitting the exhibits into evidence.

The Industrial Commission's decision concerning nature and extent and causation of disability will not be set aside unless contrary to the manifest weight of the evidence. (*Fernandez v. Industrial Com.* (1978), 71 Ill. 2d 283, 287; *Parris v. Industrial Com.* (1977), 69 Ill. 2d 31, 37), and on this record we cannot say that it is.

For the reasons stated, the judgment of the circuit court of Fulton County is affirmed.

*Judgment affirmed.*