NATIONAL WRECKING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (J. Guadalupe Velasquez, Appellee).

First District (Industrial Commission Division)   No. 1—03—1162WC

Opinion filed September 8, 2004.

Michael J. Brennan, of Kane, Doy & Harrington, Ltd., of Chicago, for appellant.

David B. Menchetti, of Cullen, Haskins, Nicholson & Menchetti, P.C., of Chicago, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

# I. INTRODUCTION

Employer, National Wrecking Company, seeks review of a decision of the Industrial Commission (Commission) finding that claimant, J. Guadalupe Velasquez, is totally and permanently disabled and awarding claimant $1,211.74 in medical expenses. The trial court confirmed the Commission's decision. On appeal, employer argues that (1) the Commission's decision was contrary to the law of the case because it contradicted findings the Commission made in connection with an earlier award of temporary total disability (TTD) benefits, (2) the arbitrator and the Commission erred in admitting claimant's medical and hospital records, and (3) the Commission's decision is against the manifest weight of the evidence. We agree with employer that the arbitrator and the Commission should not have admitted claimant's hospital records and certain medical records. Therefore, we reverse and remand the cause for a new hearing on the issues of permanent disability and medical expenses.

# II. BACKGROUND

On July 15, 1992, claimant was 38 years old and injured his back while working for employer. Claimant and a coworker were using ropes to lift a 300-pound piece of wood from the first floor to the second floor. Claimant felt a sudden pain in his back and lost sensation in his legs. An MRI performed on August 21, 1992, was interpreted as normal. Claimant treated with Dr. Benjamin Narrajos from August 1992 until January 1993. Because claimant continued to be symptomatic, Dr. Narrajos referred him to Dr. Jit Kim Lim, a neurosurgeon, in September 1992. Dr. Lim diagnosed sciatic pain and possible median and ulnar nerve entrapment. He prescribed a myelogram and a post-myelogram CT scan, but employer would not authorize it. Claimant testified that he stopped seeing Dr. Narrajos because he no longer could afford to do so.

In February 1993, claimant saw Dr. John Dwyer at employer's request. Dr. Dwyer opined that there was no objective evidence of any disability in claimant's back and legs and that claimant could return to work without restrictions or further treatment.

In April 1994, the Commission found that claimant was entitled to TTD benefits from August 5, 1992, through February 11, 1993, and $6,165 in medical expenses. The Commission based its TTD award on:

> "[claimant's] credible testimony of his complaints and limitations, and on Dr. Narrajos' medical work restriction beginning August 5, 199[2]. However, [claimant] has not treated with Dr. Narrajos since January 1993. As of February 11, 1993, Dr. Dwyer opined [claimant] could return to work without restrictions. The Commission finds that [claimant] has failed to prove he is temporarily totally disabled thereafter."

The Commission remanded the cause to the arbitrator to decide whether claimant was entitled to further TTD benefits or benefits for permanent disability. In 1997, the trial court confirmed the Commission's decision. Employer did not appeal the trial court's ruling.

After several continuances, the hearing on further TTD benefits and permanent disability occurred over three dates between July 25, 2000, and November 13, 2000. By this time, claimant's attorney had withdrawn, and claimant, who did not speak English, was *pro se*. Claimant testified through an interpreter. The arbitrator questioned claimant, who provided a summary of his medical records and treatment. Claimant was unable to recall the nature of some of the treatment reflected in his medical bills. He testified that, in October 1993, he sought treatment and physical therapy for his back problems at Holy Cross Hospital. In February 1994, claimant saw Dr. Phillip Gattas, who performed an examination and took X rays. In July and September 1994, claimant saw Dr. Amal Hachache, a neurologist, who prescribed medication for the back pain. Claimant visited University of Illinois Chicago (UIC) Medical Center a few times between February 1995 and February 1996, and received conservative treatment to manage pain in his neck, back, and legs. In May 1996, the Social Security Administration found claimant to be totally disabled. In April, August, and October 1998, claimant treated with Dr. Stanley Bialowas.

Claimant testified that his injuries prevented him from returning to work and that he has suffered no intervening injuries. He wore a back brace to help reduce his pain. Claimant still experienced pain and numbness in his legs and feet and used a cane to walk. Claimant continued to see Dr. Bialowas to renew his prescriptions. No physician has released claimant to return to work.

Over employer's objection on the grounds of lack of foundation and relevance, the arbitrator admitted claimant's medical bills. Employer objected to all of claimant's medical and hospital records on the ground that no foundation had been laid for them. Employer objected to claimant's hospital records because they had not been certified pursuant to section 16 of the Workers' Compensation Act (Act) (820 ILCS 305/16 (West 2000)). Also, employer argued that the physicians' reports were inadmissible hearsay. The arbitrator allowed these records into evidence as group exhibits.

The medical and hospital records were not supported by any medical testimony. The records do not appear in any logical order and are difficult to follow. The hospital records reveal the following. From December 1995 through January 2000, claimant received treatment at Norwegian American Hospital for his neck, back, and leg problems. A report of a CT scan taken at Norwegian American Hospital on January 24, 1996, concluded that there was mild disc bulging at L4-L5 and possibly significant disc herniation at L5-S1. CT scans of the cervical and thoracic regions taken on February 14, 1996, were read as normal. The results of an EMG performed on January 11, 1996, were read as normal. Claimant also received treatment for his problems at Pro-Health Medical Center from January 1996 through October 1999.

The physicians' reports reveal the following. On February 8, 1994, Dr. Gattas diagnosed lumbar intervertebral disc syndrome, cervical radiculitis, displacement of the thoracic intervertebral segment, cervicobrachial syndrome, lumbar paravertebral myospasms, cervical, thoracic, and lumbar myofascitis, lumbago, and dorsal paravertebral myospasms. He opined that claimant's conditions were the result of his work-related accident.

On February 27, 1996, claimant saw Dr. W. Charles Kennedy of the neurosurgery department at UIC Medical Center. Dr. Kennedy summarized his findings in a letter to Dr. Bialowas. Dr. Kennedy's impressions were thoracic and lumbar spine pain with radiation into the right leg and a possible disc protrusion at L5-S1. He recommended an MRI of the thoracic and lumbar regions or a complete myelogram including the cervical region. Dr. Kennedy believed that, because of his findings and the extensive evaluation claimant had undergone, a more aggressive approach might be justified.

On March 15, 1996, at the request of claimant's attorney, Dr. Bialowas wrote to an administrative law judge of the Social Security Administration. He reported that a January 24, 1996, CT scan showed soft tissue density at L4-L5 and L5-S1 indenting the ventral surface of the thecal sac. A January 11, 1996, EMG was normal, thus ruling out significant nerve root impingement. According to Dr. Bialowas, despite

the normal EMG, claimant's disc pathology caused him a great deal of lower back pain and stiffness. He did not believe that claimant could walk without using a cane or sit or stand for extended periods.

At employer's request, Dr. Dwyer examined claimant on May 26, 1998. He concluded that claimant demonstrated no objective evidence of disability or impairment about his lumbrosacral spine. Claimant could resume his normal occupational and daily living activities without restriction or further treatment.

The arbitrator found that claimant was permanently and totally disabled as of February 27, 1996, the day he saw Dr. Kennedy. The arbitrator assigned more weight to the reports of Drs. Gattas, Kennedy, and Bialowas than that of Dr. Dwyer. Also, the arbitrator awarded claimant $1,661 in medical expenses.

The Commission likewise found that claimant was permanently and totally disabled but reduced the medical expenses award to $1,211.74. The Commission relied on Dr. Kennedy's opinion that claimant was unable to work and Dr. Bialowas's opinion that claimant needed a cane. Employer sought judicial review, and the trial court confirmed the Commission's decision. Employer timely appealed.

## III. DISCUSSION

### A. Law of the Case Doctrine

■ Employer argues first that the Commission's decision to award permanent total disability (PTD) benefits is contrary to the law of the case established by the Commission's 1994 decision to award TTD benefits only until February 11, 1993. According to employer, because the Commission found that claimant was not temporarily and totally disabled after that date, it was improper to relitigate during the second arbitration hearing whether claimant was totally disabled. We disagree.

Under the law of the case doctrine, the unreversed decision of a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit. *Irizarry v. Industrial Comm'n*, 337 Ill. App. 3d 598, 606 (2003). The second arbitration hearing involved different legal and factual issues, and the law of the case doctrine did not prohibit the litigation of those new issues. The first arbitration hearing addressed claimant's entitlement to TTD benefits and the extent of claimant's disability at the time of the first arbitration hearing. The second arbitration hearing addressed claimant's entitlement to PTD benefits and the extent of claimant's disability after the first arbitration hearing.

Contrary to employer's assertion, the Commission did not decide in 1994 that claimant was not totally disabled after February 11, 1993.

The Commission merely ruled that claimant "failed to prove he is temporarily totally disabled thereafter." As the Commission noted, claimant last saw his treating physician in January 1993. In February 1993, Dr. Dwyer opined that claimant could return to work without restrictions. Claimant failed to produce any medical evidence to rebut this opinion. Any deficiency in claimant's evidence regarding his entitlement to TTD benefits beyond February 1993, however, did not preclude him from subsequently attempting to prove that he was permanently and totally disabled. The Commission did not relitigate the TTD issue or make any findings that were inconsistent with its earlier decision. Instead, it considered entirely new evidence to find that claimant was entitled to PTD benefits. Therefore, the law of the case doctrine does not apply here.

## B. Admissibility of Medical Reports

■ Employer argues second that the reports of Drs. Gattas, Kennedy, and Bialowas were hearsay and should not have been admitted. Except when the Act provides otherwise, the Illinois rules of evidence govern proceedings before the Commission or an arbitrator. 50 Ill. Adm. Code § 7030.70(a) (2003); *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 479 (1989); *Cassens Transport Co. v. Industrial Comm'n*, 262 Ill. App. 3d 324, 327 (1994). Evidentiary rulings made during a workers' compensation proceeding will not be disturbed on review absent an abuse of discretion. *Mobil Oil Corp. v. Industrial Comm'n*, 327 Ill. App. 3d 778, 788 (2002).

Although they dispute whether *Fencl-Tufo Chevrolet, Inc. v. Industrial Comm'n*, 169 Ill. App. 3d 510 (1988), supports the arbitrator's evidentiary rulings, the parties agree that the governing law is found in that decision. In *Fencl-Tufo*, the employer objected on hearsay grounds to the admission of EMG and physicians' reports. Relying on *United Electric Coal Co. v. Industrial Comm'n*, 93 Ill. 2d 415, 420-21 (1982), the court recognized that the rule against the admission of hearsay evidence is not absolute and that, under certain circumstances, the probability of the evidence's accuracy and trustworthiness may act as a substitute for cross-examination under oath. *Fencl-Tufo*, 169 Ill. App. 3d at 514. It held that, because the reports were not prepared for litigation purposes but instead to assist in the treatment of the claimant's injury, there was little reason to suspect their trustworthiness. *Fencl-Tufo*, 169 Ill. App. 3d at 514-15.

The reports of Drs. Gattas and Kennedy appear to have been prepared in the course of claimant's medical treatment. Therefore, we cannot say that the arbitrator and the Commission abused their discretion by admitting and considering them. It is clear, however, that Dr.

Bialowas's letter, written at the behest of claimant's attorney to an administrative law judge of the Social Security Administration, was prepared for the purpose of assisting claimant during the litigation to procure social security benefits and should not have been admitted under *Fencl-Tufo*.

## C. Admissibility of Hospital Records

■ Employer argues that the arbitrator and the Commission erred by admitting the records of Norwegian American Hospital, UIC Medical Center, and Holy Cross Hospital because these records were not certified pursuant to section 16 of the Act. The relevant provision of section 16 states:

> "The records kept by a hospital, certified to as true and correct by the superintendent or other officer in charge, showing the medical and surgical treatment given an injured employee in such hospital, shall be admissible without any further proof as evidence of the medical and surgical matters stated therein, but shall not be conclusive proof of such matters." 820 ILCS 305/16 (West 2000).

Claimant responds that the hospital records are inherently reliable and therefore were properly admitted pursuant to *Fencl-Tufo*. We disagree and conclude that the reasoning of *Fencl-Tufo* does not apply to certification issues under section 16 of the Act.

Under the rules of evidence, a foundation must be laid for documents admissible pursuant to the business records exception to the hearsay rule. The party tendering the record must demonstrate that the record was made in the regular course of business and at or near the time of the transaction. See 145 Ill. 2d R. 236(a). A sufficient foundation for admitting business records may be established through the testimony of the custodian of the records or another person familiar with the business and its mode of operation. *In re Estate of Weiland*, 338 Ill. App. 3d 585, 600 (2003); *Lecroy v. Miller*, 272 Ill. App. 3d 925, 936 (1995).

Section 16 in effect eases the foundational requirement by stating that hospital records "certified to as true and correct by the superintendent or other officer in charge *** shall be admissible without any further proof." 820 ILCS 305/16 (West 2002). Although the legislature has made it easier to introduce hospital records during workers' compensation proceedings, the language and purpose of section 16 demonstrate that the legislature intended certification to be a minimum foundational requirement that must be satisfied before the records may be admitted "without any further proof." It would be inappropriate for this court to recognize a potential means of bypassing section 16 and the rules of evidence, thereby eliminating the foundational requirement altogether.

*Fencl-Tufo* and *United Electric Coal Co.* addressed only hearsay objections and had nothing to do with section 16. The *Fencl-Tufo* court specifically noted that the employer objected to the hearsay nature of the evidence and not to any lack of certification pursuant to section 16. *Fencl-Tufo*, 169 Ill. App. 3d at 514. Similarly, the *United Electric* court noted that there was no challenge to the medical records' authenticity. *United Electric*, 93 Ill. 2d at 420.

If a document is admissible pursuant to an exception to the hearsay rule, the proponent must still lay an adequate foundation for its admission into evidence. *Raithel v. Dustcutter, Inc.*, 261 Ill. App. 3d 904, 908 (1994). To authenticate a document, evidence must be presented to demonstrate that the document is what its proponent claims. *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 247-48 (1991). That was not accomplished here even by the simplest method, which is certification under section 16. Because the foundational concerns of section 16 are fundamentally different from the hearsay concerns addressed in *United Electric* and *Fencl-Tufo*, there is no basis for reading those decisions as creating a "reliability" exception to the certification requirement. Our supreme court has recognized that hospital records are highly reliable but nevertheless stated that a proper foundation is required before they will be admitted into evidence. *Wilson v. Clark*, 84 Ill. 2d 186, 192, 194 (1981). Recognizing a "reliability" exception in effect means that there is no foundational requirement and that the pertinent language of section 16 is meaningless. See *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001) (court must construe statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered meaningless or superfluous).

We recognize that, in practice, the parties often stipulate to the admission of hospital records. Here, out of concerns about whether the jumbled records claimant sought to introduce were complete and trustworthy, employer timely objected. We sympathize with claimant's situation and realize that the evidentiary problems here occurred because claimant was required to proceed *pro se*. When a proper objection is raised, however, the certification requirement of section 16 must be observed.

For these reasons, we conclude that the arbitrator and the Commission erred in admitting and considering claimant's hospital records. Along with Dr. Bialowas's report, these records played an important role in the Commission's decision. Therefore, it is necessary to set aside the Commission's decision and remand the cause for a new hearing. Our resolution of the evidentiary issues makes it unnecessary to address employer's remaining contention.

## IV. CONCLUSION

The judgment of the circuit court of Cook County, confirming the Commission's decision, is reversed, and the cause is remanded for a new hearing on the issues of permanent disability and medical expenses.

Reversed and remanded.

McCULLOUGH, P.J., and HOFFMAN and HOLDRIDGE, JJ., concur.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I concur in the result reached by my colleagues in the majority opinion. The majority, however, contends that section 16 of the Act establishes a foundational requirement for the admission of any hospital records. I respectfully disagree.

Section 16 provides:

"The records kept by a hospital, certified as true and correct by the superintendent or other officer in charge, showing the medical and surgical treatment given an injured employee in such hospital, shall be admissible without any further proof as evidence of the medical and surgical matters stated therein, but shall not be conclusive proof of such matters." 820 ILCS 305/16 (West 2000).

The plain language of the statute does not require that hospital records be certified in order to be admitted. Although section 16 provides a mechanism for admission of certified hospital records without any further proof, there is no language stating that hospital records must be certified.

The majority contends that admitting uncertified records that were otherwise reliable under the standards of *Fencl-Tufo* would bypass a certification requirement of section 16. I disagree that section 16 establishes a certification requirement, but agree that the hospital records in this case have not been shown to be reliable.

*Fencl-Tufo* gives discretion to the Commission to admit records that would otherwise be inadmissible if they are trustworthy and accurate. *Fencl-Tufo* did not address section 16. The claimant in *Fencl-Tufo* specifically pointed out that the respondent was objecting to the hearsay nature of the evidence and not to a lack of proper certification under section 16. *Fencl-Tufo*, 169 Ill. App. 3d at 514, 523 N.E.2d at 929. The question of when uncertified hospital records would be reliable enough to be admitted was not discussed. The case at hand does not provide grounds for answering this question because the docu-

ments were presented in a jumbled manner that makes them untrustworthy.

This does not mean that the Commission should be prevented from admitting uncertified records that it otherwise believes are authentic and trustworthy. In some situations, the Commission could find uncertified hospital records sufficiently reliable. As with other business records, medical and hospital records may be employed to refresh a witness's recollection and for impeachment, or admissible as past recollection recorded and as admissions of a party opponent. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence Section 803.11 at 832 (7th ed. 1999). The majority provides no reason why uncertified hospital records that a court otherwise finds authentic and trustworthy should be automatically excluded. In essence, the majority would place a burden of certification for hospital records that is not required for other medical records. Although the majority suggests that the employer's motive for objecting was out of concerns about the jumbled presentation of the documents, there may arise instances where a party objects to uncertified hospital records whose authenticity was not challenged prior to arbitration or otherwise in doubt. The determination of trustworthiness and authenticity should be in the discretion of the Commission.

Section 16 allows for certified hospital records to be admitted without any further proof. The section does not require certification.