2019 IL App (1st) 181449WC

Workers' Compensation
Commission Division
Opinion Filed: June 28, 2019

No. 1-18-1449WC

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RAVENSWOOD DISPOSAL SERVICES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 L 051033 |
| | ) | |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.* | ) | |
| | ) | |
| (Sergio Lagunas, n/k/a Sergio Delgado, by His | ) | Honorable |
| Parent/Guardian Maria Diaz, Next of Kin of Raul | ) | James McGing, |
| Lagunas, Deceased, Appellee). | ) | Judge, Presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hudson, Cavanagh and Barberis concurred in the judgment and opinion.


**OPINION**

¶ 1    Ravenswood Disposal Services (RDS) appeals from an order of the circuit court of Cook County, confirming a decision of the Illinois 'Workers' Compensation Commission (Commission) that (1) found that an employment relationship existed between it and the

decedent, Raul Laguna, on September 14, 2013, when, while working, Raul was pinned between two vehicles resulting in his death, and that Raul's minor son, Sergio Lagunas, now known as Sergio Delgado, qualifies as a dependent under section 7(a) of the Workers' Compensation Act (Act) (820 ILCS 305/7(a) (West 2012)), notwithstanding the fact that he was adopted by Isidro Delgado subsequent to the date of the accident, which resulted in the death of his father; (2) awarded Sergio death benefits and weekly benefits until age 18 or, if he is enrolled in an accredited educational institution, until age 25, penalties under sections 19(k) and (*l*) of the Act (*id.* § 19(k), (*l* )and attorney fees under section 16a of the Act ( *id.* § 16a); and (3) ordered it to pay Raul's medical bills of $17,570.61, subject to the statutory fee schedule. For the reasons which follow, we affirm.

¶ 2    The following factual recitation is taken from the evidence adduced at the arbitration hearing held on October 26, 2015.

¶ 3    Maria Diaz and Raul married on June 4, 1996. Their son, Sergio, was born on November 9, 2001. Maria and Raul divorced on August 18, 2010, and on October 17, 2010, Maria married Isidro Delgado. It is uncontested that Raul died on September 15, 2013, after he was crushed between a dump truck and front loader on the premises of RDS on September 14, 2013. The parties stipulated that RDS paid funeral and burial costs totaling $14,062.50 and made one payment of $1497.60 for death benefits.

¶ 4    Maria testified that, after she and Raul divorced, Raul complied with the court's order to pay her child support, which, according to their marital settlement agreement (MSA), amounted to $313.04 every other week. Later, when Raul began receiving cash payments from RDS, he gave Maria payments totaling $200 to $300 per week. Until he died, Raul made those payments on a weekly or monthly basis, depending on when Maria needed the money, and also gave

Sergio a weekly allowance of $10 to $30. Maria explained that she and Raul "provided for" Sergio even though he lived with her and Isidro and, although she did not have "frequent" contact with Raul, he responded "any time [she] needed help from him." After Raul died, Isidro adopted Sergio, and Maria changed the last name on his birth certificate from Lagunas to Delgado. Until his adoption, Sergio used the last name Lagunas.

¶ 5    Branko Vardijan, RDS's president, testified that Raul began working for RDS and its related companies "a few years before his death." A spreadsheet entered into evidence showed that RDS paid Raul a total of $37,674.70 between September 8, 2012, and September 11, 2013. Raul received $750 per week between September 8, 2012, and November 10, 2012, but entries between November 17, 2012, and September 11, 2013, varied between $0 and $1264 per week. Vardijan stated that RDS initially paid Raul by sending checks to a staffing company but later, at Raul's request, paid him directly in cash. RDS did not issue him "W-2" or "1099" forms for the cash payments. Vardijan explained that the cash payments began following a conversation in March 2013 between him, his brother, and Raul, during which Raul requested to "do work differently." Specifically, Raul asked to work at just one of RDS's premises and to set his own hours. Notwithstanding, Vardijan stated that he told Raul "what to do" and agreed that he "control[led] *** the way that [Raul] did his job." Vardijan added that he considered Raul to be an employee and acknowledged that, when the accident occurred, he was "doing the work that employees do."

¶ 6    Sergio testified that, at the time of the hearing, he considered his parents to be Maria and Isidro. He agreed that Isidro "bought [him] things" after marrying Maria and that he spent most of his free time with Isidro and Maria and went on vacations with them. Sergio agreed that he did not see Raul often after Raul and Maria divorced but also stated that Raul picked him up from

school two or three days per week and would give him $5 or $10. Sergio's school records and a martial arts award from 2015 listed his last name as Delgado, but he explained that he did not use the name Delgado until "after" Maria and Isidro "changed [his] last name."

¶ 7    Maria testified that, at the time of the hearing, she paid "a hundred percent" of the expenses for Sergio's "[h]ealth and welfare." When Isidro contributed, he typically paid "a little less" than 30% of Sergio's expenses.

¶ 8    Prior to the close of proofs, Maria's counsel entered into evidence a notice issued by the Department of Healthcare and Family Services (DHFS) to RDS, stating that DHFS "has become subrogated to [Raul]'s right of action to recover medical expenses paid on [his] behalf." Maria's counsel also tendered bills from the medical providers who treated Raul before he died. Although counsel represented that the bills "were sent directly to [Maria]," each was addressed to Raul at his address in Chicago.

¶ 9    RDS's counsel objected to the admission of the bills into evidence on the basis that "many of [the bills] have been reduced," but he did not specify which bills were inaccurate and did not provide his own calculations for the unpaid expenses. The arbitrator asked RDS's counsel whether he had "any other grounds" for objecting to the bills' admission into evidence, and he said, "no." Next, the arbitrator asked Maria's counsel whether the bills were obtained pursuant to subpoena and certified for purposes of the Act. Maria's counsel stated that the bills were certified but that the certifications were not attached to them and that he could "make [a] representation to the court" that they had been obtained pursuant to subpoena. The arbitrator stated that the bills would be entered into evidence subject to "the grounds that are stated in [RDS's] objection."

¶ 10    Following the arbitration hearing on October 26, 2015, the arbitrator held that (1) RDS employed Raul on the date of the accident, (2) the accident arose out of and in the course of his employment, and (3) Sergio was Raul's survivor for purposes of section 7(a) of the Act. The arbitrator found that RDS unreasonably argued that no employment relationship existed, as the evidence established that it controlled Raul's work, paid him regularly during the year preceding his death, and its president considered him to be an employee. The arbitrator also noted that, although RDS "raised reasonable questions" as to whether Sergio was entitled to benefits after Maria's second husband, Isidro Delgado, adopted him following Raul's death, Sergio's right to benefits under the Act was unaffected by his adoption, the fact that Isidro financially supported him, or evidence that he regarded Isidro as a father and lacked "emotional ties" with Raul. The arbitrator concluded that, because Sergio was Raul's dependent when Raul died, Raul was legally required to support him, and because Maria testified "credibly" that Raul paid child support until his death, Sergio was entitled to section 7(a) benefits. The arbitrator (1) ordered RDS to pay Raul's medical bills totaling $17,570.61, subject to the fee schedule; (2) awarded Sergio death benefits of $48,089.90 and weekly benefits of $473.39 until age 18 or, if he is enrolled in an accredited educational institution, until age 25; and (3) granted RDS a $15,560.10 credit for already-paid death benefits and funeral expenses. Additionally, the arbitrator imposed penalties of $32,081.46 and $10,000 pursuant to sections 19(k) and 19(*l*) of the Act, respectively, and attorney fees and costs totalling $12,832.58 under section 16 of the Act.

¶ 11    RDS filed a petition for review of the arbitrator's decision before the Commission. On November 17, 2017, with one commissioner dissenting, the Commission affirmed and adopted the arbitrator's decision. The dissenting commissioner noted that, although section 7(a) of the Act does not expressly terminate benefits for dependent minors upon adoption in the same

manner as for surviving spouses who remarry, that provision should be construed in light of the Adoption Act (750 ILCS 50/1 *et seq.* (West 2012)). As the Adoption Act's intent "is to terminate all parental rights and responsibilities of [a] biological parent in *lieu* of the adoptive parent," and the Act's purpose "is to protect dependent children in case of [the] work-related death of a parent upon whom the child is legally dependent," the dissenting commissioner reasoned that Sergio's adoption "terminated his dependency on his late father and therefore his entitlement to survivor benefits." (Emphasis in original.) According to the dissenting commissioner, the majority's decision would allow Sergio to collect double benefits should Isidro also die in a work-related accident, which would be "fundamentally unfair and might have due process implications."

¶ 12    RDS sought a judicial review of the Commission's decision in the circuit court of Cook County. On June 7, 2018, the court entered a written order confirming the Commission's decision, and this appeal followed.

¶ 13    As an initial matter, we observe that RDS directs each of its four assignments of error against the order of the circuit court affirming the Commission's decision. When, as here, an appeal is taken following entry of judgment by the circuit court on review from a decision of the Commission, this court reviews the ruling of the Commission, not the judgment of the circuit court. *Dodaro v. Illinois Workers' Compensation Comm'n*, 403 Ill. App. 3d 538, 543 (2010).

¶ 14    For its first assignment of error, RDS claims that the Commission's finding that Raul was its employee, and not an independent contractor, when the accident occurred was against the manifest weight of the evidence. RDS notes that Raul did not have an employment contract, Vardijan did not control his schedule, and Raul requested to work at a particular location. Additionally, RDS posits that variations in Raul's cash payments during the months preceding

the work accident suggest that he was not paid in the manner of either an employee for RDS or the staffing company.

¶ 15    Whether an employment relationship existed at the time of an accident is a question of fact. *Esquinca v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 150706WC, ¶ 48. "In resolving questions of fact, it is within the province of the Commission to assess the credibility of witnesses, resolve conflicts in the evidence, assign weight to be accorded the evidence, and draw reasonable inferences from the evidence." *Id.* We will disturb the Commission's determination of a factual issue only if it is against the manifest weight of the evidence. *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 64 (2006). For a factual finding to be against the manifest weight of the evidence, the "opposite conclusion" must be "clearly apparent," such that "no rational trier of fact could have agreed" with the Commission. *Id.* Whether a reviewing court might reach the opposite conclusion is not the test of whether the Commission's determination of a question of fact is supported by the manifest weight of the evidence; rather, the appropriate test is "whether there is sufficient factual evidence in the record to support the Commission's decision." *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982).

¶ 16    It is well established that, "[f]or purposes of the Act, the term 'employee' should be broadly construed." *Esquinca*, 2016 IL App (1st) 150706WC, ¶ 46. Although "[n]o rigid rule exists regarding whether a worker is an employee or an independent contractor," several criteria are relevant to consider in making this determination. *Labuz v. Illinois Workers' Compensation Comm'n*, 2012 IL App (1st) 113007WC, ¶ 30. "The single most important factor is whether the purported employer has a right to control the actions of the employee." *Ware v. Industrial Comm'n*, 318 Ill. App. 3d 1117, 1122 (2000) (citing *Bauer v. Industrial Comm'n*, 51 Ill. 2d 169, 172 (1972)). Another criterion "of great significance" is the nature of the alleged employee's

work in relation to the employer's general business. *Id.* (citing *Ragler Motor Sales v. Industrial Comm'n*, 93 Ill. 2d 66, 71 (1982)). Other relevant criteria include "the method of payment, the right to discharge, the skill the work requires, which party provides the needed instrumentalities, *** whether income tax has been withheld," and to a lesser extent, "the label the parties place upon their relationship." *Id.*

¶ 17    The nature of RDS's business and the scope of Raul's duties are not specified in the record, but it is undisputed that he died after he was crushed between a dump truck and front loader on RDS's premises, and no evidence suggested that he had provided those vehicles. Vardijan agreed that Raul was "doing the work that employees do," and that he told Raul "what to do" and "control[ed] *** the way that [Raul] did his job," albeit at a worksite and on a schedule that Raul preferred. Further, Vardijan acknowledged that RDS did not issue Raul either a W-2 form or 1099 form for the cash payments he received between March 2013 and September 2013. Thus, although RDS posits that the cash payments recorded in the spreadsheet do not, in themselves, prove that he received wages as an employee, neither do they support the inference that he was compensated as an independent contractor where RDS admitted that it never created the tax forms that could have been relevant to that determination. See *Reo Movers, Inc. v. Industrial Comm'n*, 226 Ill. App. 3d 216, 224 (1992) (inferring that evidence which an employer did not produce at a hearing would be adverse to the employer where such evidence was in its control and not equally available to the employee). These circumstances, taken as a whole and considered alongside Vardijan's admission that he considered Raul to be an employee, support the Commission's finding that an employment relationship existed between Raul and RDS when the accident occurred. Based on this record, the Commission's determination is not against the manifest weight of the evidence, and RDS's claim of error is, therefore, without merit.

¶ 18    Next, RDS contends that the Commission erred as a matter of law in awarding $17,570.61 for medical bills that were entered into evidence without proof that they were certified or obtained pursuant to subpoena under section 16 of the Act (820 ILCS 305/16 (West 2012)). RDS further posits that, due to write-offs, reductions, and payments from other sources, Raul's unpaid medical expenses "only amount to $9,131.61."

¶ 19    Section 16 of the Act relaxes the foundational requirement for the admission of hospital records by providing that "records, reports, and bills kept by a treating hospital, *** certified to as true and correct by the hospital, *** shall be admissible without any further proof as evidence of the medical and surgical matters stated therein." *Id.*; *National Wrecking Co. v. Industrial Comm'n*, 352 Ill. App. 3d 561, 567 (2004). The statute creates "a rebuttable presumption that any such records, reports, and bills received in response to Commission subpoena are certified to be true and correct." 820 ILCS 305/16 (West 2012). "[H]ospital records are highly reliable," but "a proper foundation" is still required "before they will be admitted into evidence." *National Wrecking Co.*, 352 Ill. App. 3d at 568. Therefore, "[w]hen a proper objection is raised, *** the certification requirement of section 16 must be observed." *Id.*

¶ 20    At the hearing, RDS's counsel objected to the admission of Raul's medical bills on a single ground—namely, that "many" of the bills had been reduced and were, therefore, inaccurate—and expressly denied raising any other challenge to their admissibility. The arbitrator admitted the bills into evidence subject to the objection "stated in [RDS's] objection." Thus, although the arbitrator also questioned Maria's counsel about whether the bills had been certified or obtained pursuant to subpoena, RDS never objected to their admission on that basis. Its claim of error based upon lack of certification is, therefore, forfeited. See *People v. Sawyer*, 42 Ill. 2d 294, 298 (1969) (declining to consider a claim of evidentiary error where the objection

urged on review involved "an entirely different basis from the objection in the trial court"). As for RDS's claim that Raul's unpaid medical bills totaled $9131.61, RDS never raised that figure before the arbitrator, nor did RDS apprise the arbitrator, the Commission, the circuit court, or this court of the particular bills that it challenged. The appellate court "is not merely a repository into which an appellant may dump the burden of argument and research, nor is it the obligation of this court to act as an advocate or seek error in the record." (Internal quotation marks omitted.) *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009). The vagueness of RDS's argument precludes this court from conducting any meaningful review of its challenge to the arbitrator's award of medical expenses. As such, this argument is rejected.[1]

¶ 21    For its next assignment of error, RDS contends that the Commission erred in finding that Sergio qualified as Raul's dependent under section 7(a) of the Act because, as a matter of law, death benefits are not due to a decedent's child who has been adopted. In support of this position, RDS observes that section 17 of the Adoption Act (750 ILCS 50/17 (West 2012)) provides that "[a]fter *** the entry of a judgment of adoption, the natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child." As the legal obligation for Sergio's support no longer rested with Raul (or more accurately, Raul's estate) following his adoption by Isidro, RDS posits that his adoption "sever[ed] any liability [for death benefits] that would otherwise have existed under the Act."

_____

[1]We note that, although DHFS purported to have subrogated Raul's "right of action to recover medical expenses paid on [his] behalf," RDS never raised DHFS's claim as a defense to Maria's attempt to secure payment of Raul's medical expenses through the workers' compensation proceeding. See 820 ILCS 305/7(f) (West 2012) (providing that an employer who fails to provide necessary "medical, surgical or hospital service" to a decedent employee "shall pay the cost thereof to the person or persons *** *providing the same*" (emphasis added)).

¶ 22    This issue presents a question of statutory interpretation, and our review is, therefore, *de novo*. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12. Our primary objective in construing a statute is to give effect to the legislature's intent, which is best indicated by the plain and ordinary language of the statute. *Id.* In giving meaning to the words and clauses of a statute, no part should be rendered superfluous. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26. When statutory language is unambiguous and clear, it will be given effect without reliance on other devices of construction. *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13. However, when a statute's meaning is unclear, the court may consider the purpose of the statute, the evils it was designed to remedy, and the consequences that would result from construing it in a particular manner. *Id.* In determining legislative intent, "we presume that the legislature did not intend absurd, inconvenient, or unjust consequences." *Id.* A court will not "rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature." *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009).

¶ 23    The purpose of section 7(a) of the Act (820 ILCS 305/7(a) (West 2012)) "is to provide some compensation to persons who were dependent upon the deceased employee for support or as to whom a legal obligation to support existed." *Yellow Cab Co. v. Industrial Comm'n*, 42 Ill. 2d 226, 230 (1969). Thus, "section 7(a) sets up a subcategory of persons, specifically the surviving widow and child or children, who are conclusively presumed to be dependent upon the deceased because he was under a legal obligation to support them at the time of the accident." *Id.* When a deceased employee's only survivor who is entitled to benefits under the Act is a spouse, and that spouse remarries, he or she has a right to a lump-sum payment equal to two years' compensation, "and all further rights of such widow or widower shall be extinguished." 820 ILCS 305/7(a) (West 2012). In contrast, death benefits must be paid to "any surviving child ***

until \*\*\* the age of 18," or if the child is "enrolled as a full time student in any accredited educational institution, the payments shall continue until such child has attained the age of 25." *Id.* The term "child" refers to "a child whom the deceased employee left surviving, including a posthumous child, a child legally adopted, a child whom the deceased employee was legally obligated to support or a child to whom the deceased employee stood *in loco parentis*." *Id.* The phrase "legally obligated to support" does not create "a statutory requirement for benefits" under section 7(a) of the Act. *Drives, Inc. v. Industrial Comm'n*, 124 Ill. App. 3d 1014, 1017 (1984). Rather, it "serves merely as a catch-all for those [children] not covered" by the other categories enumerated in the statute. *Id.*

¶ 24    Based on this construction of section 7(a) of the Act, the court in *Drives* determined that a surviving child who qualified for death benefits on the basis that she was enrolled full-time in graduate school could not be denied benefits on account of her marriage, which occurred after her father's death. *Id.* at 1015, 1017. While the child's marriage may have obviated the decedent's legal obligation to support her, and therefore eliminated that circumstance as a ground for awarding benefits, it had no bearing on her right to benefits based on a different statutory criterion—*i.e.*, her status as a full-time student. *Id.* at 1017. Thus, section 7(a) of the Act contemplates that a child may qualify for benefits based on one statutory ground but not another, and the fact that a child does not qualify under a particular ground will not prevent him or her from obtaining benefits under a different ground, if one exists.

¶ 25    Applying these principles in the present case, we find that Sergio's adoption by Isidro following Raul's death may have precluded Sergio from claiming ongoing benefits on the basis that Raul was "legally obligated" to support him but did not restrict him from claiming benefits on different grounds, namely, that he was under age 18 when Raul died. See 820 ILCS 305/7(a)

(West 2012). And, unlike for a surviving spouse who remarries, the Act contains no express language terminating Sergio's right to benefits by reason of his adoption where he otherwise qualified for benefits based on his age when the accident occurred. We will not read into the Act such a limitation when it does not appear in its plain language. *LOMTO Federal Credit Union v. 6500 Western LLC*, 2018 IL App (1st) 173106, ¶ 18.

¶ 26    In so holding, we reject RDS's position that this outcome is irreconcilable with section 17 of the Adoption Act (750 ILCS 50/17 (West 2012)), which addresses the duties owed by a natural parent to a child, not the child's rights *vis-á-vis* the natural parent. Moreover, our supreme court has explained that it is not necessary "to actually establish that the child was completely dependent upon the decedent" in order to merit an award of benefits under section 7(a) of the Act; to the contrary, the Act requires that "a legally enforceable basis for the dependency existed at the time of the employee's accident." *Inventory Service Corp. v. Industrial Comm'n*, 62 Ill. 2d 34, 37 (1975). Thus, the fact that Sergio may have received some support from Isidro both before and after his adoption does not defeat his right to benefits where he also depended on Raul when the accident occurred. As such, section 17 of the Adoption Act and section 7(a) of the Act are not incompatible and do not preclude an award of benefits in this case.

¶ 27    RDS argues, however, that the evidence did not establish that Sergio was dependent on Raul at the time of his death, as Maria's testimony that Raul provided child support was "unsubstantiated" and Sergio's testimony suggested that he had already severed emotional ties with Raul. We disagree. As noted, it is the Commission's duty to assess witnesses' credibility, resolve conflicting evidence, assign weight to the evidence, and draw reasonable inferences therefrom. *Esquinca*, 2016 IL App (1st) 150706WC, ¶ 48. At the hearing, Maria testified that Raul provided child supported until his death and Sergio stated that Raul picked him up at school

approximately twice per week. Further, while Maria and Sergio agreed that Isidro was a part of their family and that he sometimes gave Sergio financial and material support, Raul's legal relationship to Sergio was not terminated prior to his death, and no evidence suggested that he failed to discharge his responsibilities under the MSA.

¶ 28    These facts differentiate the instant case from *Inventory Services Corp.* and *Hoffman-Spears v. Eastern Woolen Co.*, *Inc.* Ill. Indus. Comm'n, No. 04 I.I.C. 0809 (Dec. 9, 2004), both relied on by RDS, where section 7(a) benefits were denied to children who were fully supported by individuals who adopted them, or functioned as an adopting parent, prior to the work-related death of a natural parent who provided the child with negligible support. See *Inventory Services Corp.*, 62 Ill. 2d at 35 (denying benefits where the decedent's parental rights were terminated before his death, and, before the child's adoption, the decedent had not paid child support or visited her for more than one year); *Hoffman-Spears*, Ill. Indus. Comm'n, No. 04 I.I.C. 0809 (denying benefits where the decedent's parental rights were terminated five years' prior to his death, he saw the child twice in nearly six years, provided no monetary support, and the second husband of the child's mother stood *in loco parentis*). Here, unlike in *Inventory Services Corp.* or *Hoffman-Spears*, ample evidence supported the Commission's determination that Sergio was dependent on Raul at the time of the work accident. Consequently, there is no basis in the record to disturb the Commission's factual findings as to this issue, and RDS's argument is without merit.

¶ 29    Finally, RDS argues that the Commission's award of penalties under sections 19(k) and (*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2012)) and attorney fees under section 16a of the Act (*id.* § 16a) was against the manifest weight of the evidence or an abuse of discretion.

¶ 30    Penalties under section 19(*l*) are in the nature of a late fee, and the assessment of a penalty is mandatory if a payment is late and the employer cannot show an adequate justification for the delay. *Mechanical Devices v. Industrial Comm'n*, 344 Ill. App. 3d 752, 763 (2003). "In determining whether an employer has 'good and just cause' in failing to pay or delaying payment of benefits, the standard is reasonableness." *Id.* (citing *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515 (1998)). The employer has the burden for justifying the delay. *Jacobo v. Illinois Workers' Compensation Comm'n*, 2011 IL App (3d) 100807WC, ¶ 19. "The Commission's evaluation of the reasonableness of the employer's delay is a question of fact that will not be disturbed unless it is contrary to the manifest weight of the evidence." *Id.*

¶ 31    In contrast to section 19(*l*) of the Act, section 19(k) allows penalties for "any unreasonable or vexatious delay of payment or intentional underpayment of compensation." 820 ILCS 305/19(k) (West 2012). Penalties under section 19(k) are "intended to address situations where there is not only a delay, but the delay is deliberate or the result of bad faith or improper purpose." *McMahan*, 183 Ill. 2d at 515. Section 16a of the Act, in turn, provides for an award of attorney fees when an award of additional compensation under section 19(k) is appropriate. 820 ILCS 305/16a (West 2012). The imposition of penalties and attorney fees under sections 16a and 19(k) is discretionary and will not be disturbed on appeal unless the Commission has abused that discretion. *McMahan*, 183 Ill. 2d at 515-16.

¶ 32    Before the Commission, RDS raised two theories in defense of its nonpayment of benefits following Raul's death: (1) Sergio was not Raul's dependent and (2) Raul was not RDS's employee. The Commission found the former contention to be reasonable and the latter contention to be unreasonable. In its brief on appeal, RDS objects to the Commission's imposition of fines and fees based solely on the reasonableness of RDS's dependency argument,

without raising any challenge to the merits of the Commission's actual basis for penalties, *i.e.*, the unreasonableness of RDS's theory that no employment relationship existed. RDS posits, however, that because Sergio was Raul's sole alleged dependent, and the Commission found that RDS had a reasonable basis for challenging dependency, it was justified in not paying benefits irrespective of its decision to challenge Raul's status as its employee. We disagree.

¶ 33    RDS's argument overlooks the fact that, in addition to not paying death benefits to Sergio, it also failed to pay certain of Raul's medical expenses. RDS's liability for those expenses turned on whether Raul was its employee—an issue independent of Sergio's status as a dependent. As the Commission determined that RDS lacked a reasonable basis for challenging the existence of an employment relationship, and Raul's status as an employee gave rise to RDS's obligation to pay his medical expenses, it was not irrational for the Commission to impose penalties on RDS notwithstanding that RDS's unrelated challenge to Sergio's status as a dependent may have been reasonable.

¶ 34    As noted, on appeal, RDS has not challenged the merits of the Commission's imposition of attorney fees and penalties for its failure to pay benefits predicated on its theory that Raul was not an employee. The issue is, therefore, forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) ("Points not argued [in the initial brief on appeal] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Forfeiture aside, we observe that, for reasons explained *supra*, the manifest weight of the evidence established that Raul was RDS's employee when the accident occurred; moreover, RDS's president, Vardijan, believed that Raul was an employee and was performing the work of employees when the accident occurred. Under these circumstances, the Commission could reasonably determine that RDS's failure to pay Raul's medical expenses was deliberate and in bad faith, such that it did not abuse its discretion

in imposing penalties and attorney fees under sections 19(k) and 16a of the Act. As the standard for awarding penalties and attorney fees under sections 16a and 19(k) of the Act is higher than the unreasonable delay standard under section 19(*l*), it follows that we also cannot find that the Commission erred in imposing a late fee pursuant to section 19(*l*) of the Act.

¶ 35    Based upon the foregoing analysis, we affirm the judgment of the circuit court that confirmed the decision of the Commission.

¶ 36    Affirmed.

**No. 1-18-1449WC**

| | |
|---|---|
| **Cite as:** | Ravenswood Disposal Services v. Illinois Workers' Compensation Comm'n, 2019 IL App (1st) 181449WC |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-051033; the Hon. James McGing, Judge, presiding. |
| **Attorneys for Appellant:** | Arisa Taguchi, of Knell, O'Connor, Danielewicz, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jack M. Shapiro and Francis J. Discipio, of Law Offices of Francis J. Discipio, Ltd., of Oak Brook, for appellee. |